21STCV30083
Case 2:22-cv-00232   Document 1-1   Filed 01/11/22   Page 1 of 25   Page ID #:5
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Barbara Meiers

ctronically FILED by Superior Court of California, County of Los Angeles on 08/13/2021 06:29 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

1   Alan Romero (SBN 249000)
    Edward Wells (SBN 321696)
2   ROMERO LAW, APC
    80 S. Lake Avenue, Suite 880
3   Pasadena, CA 91101-2672
    Tel: 626.396.9900 / Fax: 626.396.9990
4   Email: firm@romerolaw.com

5   Attorneys for Plaintiff
    HOWARD WILLIAMS
6

7

8                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

10

11  HOWARD WILLIAMS, an individual, by and          Case No.:    **21STCV30083**
    through his Guardian Ad Litem Racquel Birch;
12                                                   **UNLIMITED COMPLAINT FOR**
                     Plaintiff,                      **DAMAGES**
13
                 v.                                  1.  Excessive Force (42 U.S.C. § 1983)
14                                                   2.  Failure to Protect (42 U.S.C. § 1983)
    COUNTY OF LOS ANGELES, a political               3.  Deliberate Indifference to Serious Medical
15  subdivision of the State of California; and DOES     Needs (42 U.S.C. § 1983)
    1-99, inclusive;                                 4.  Public Entity Liability (42 U.S.C. § 1983)
16                                                   5.  Bane Act (Civ. Code § 52.1)
                     Defendant.                      6.  Failure to Summon Immediate Medical
17                                                       Care (Gov't Code § 845.6)

18                                                   **[JURY FEE DEPOSIT POSTED.]**

19

20         **COMES NOW THE Plaintiff** HOWARD WILLIAMS ("Plaintiff"), by and through his

21  Guardian Ad Litem, Racquel Birch, who heretofore alleges the following facts in support of their

22  Unlimited Complaint for Damages and hereby respectfully demands *a speedy jury trial* on all causes

23  of action stated herein as against COUNTY OF LOS ANGELES ("COLA"), who along with DOES

    1-99, inclusive, are referred to herein as the "Defendants".
24
                                   <u>**CASE SYNOPSIS**</u>
25
           1.      Plaintiff Howard Williams is a pretrial detainee in the custody of the County of Los
26
    Angeles. At the time of his injuries, he was an inmate at Men's Central Jail. After his injuries, he
27
    was taken to LAC+USC Medical Center, where he remains to this day.
28

                                                   **1**
                               **UNLIMITED COMPLAINT FOR DAMAGES**

2.      On or about December 14, 2020, Plaintiff Williams was struck on the head, either by a fellow inmate, or a jailer. Williams's body crumpled to the ground. Williams was in medical distress that was open and obvious even to the medical layman.

3.      Plaintiff Williams was left to languish in his cell for a period exceeding three hours. During that time, jailers either complied with their obligation under California Code of Regulations, Title 15, section 1027.5 to observe Williams in his cell on an hourly basis in order to check on his safety and wellbeing, saw him crumpled on the ground, and did not summon medical care, or they abdicated their responsibility under Title 15 and did not observe Williams in his cell. In either case, Williams was left unattended in his cell after a grievous blow to the head.

4.      Williams suffered a stroke as a result of his head trauma. This stroke was not treated in a timely fashion, causing Williams to suffer from what modern medicine calls "locked in syndrome." Williams now suffers from locked in syndrome.

5.      Locked in syndrome is total paralysis, except in some cases (including Williams's case) the eyes, combined with a complete and healthy cognitive and volitional capacity. People afflicted with locked in syndrome are literally locked in their own bodies, unable to move, unable to communicate, unable to meet their own needs, with full understanding of their condition and a full capacity to form desires, aims, and goals. Those afflicted with locked in syndrome are complete subjects of their environment, unable to affect it in even minimal ways, with a full understanding of this and a full understanding that they will remain this way for the rest of their lives.

6.      Plaintiff's prognosis is poor, and he is not expected to have even a minimal recovery.

7.      The acts and/or omissions of COLA employees, acting under color of law and in the course and scope of their employment with the COLA caused Plaintiff to suffer grievous, permanent, and life-altering injuries, including but not limited to locked in syndrome.

8.      Plaintiff's injuries in custody resulted from the official policy of the County of Los Angeles that jail should be dismal and punitive, even to those not convicted of a crime, in violation of the 14th Amendment. Additionally, in view of the decades-long history of inmate deaths and injuries in County custody, beginning at least in 1999 and running continuously to the present (as set forth below), the County failed to train its jailers adequately. To the extent that the events at issue in this lawsuit have been investigated, yet no discipline has been imposed on any County jailer, the County has ratified the misconduct at issue in this lawsuit and is therefore liable for it.

**UNLIMITED COMPLAINT FOR DAMAGES**

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### Jurisdiction and Venue

9.      This Court has jurisdiction of the subject matter of Plaintiff's claims. Jurisdiction is proper in this Court because the damages and claims alleged and demanded herein by Plaintiff exceeds $25,000, and Plaintiff herein does make a demand and prayer for damages, in excess, of the jurisdictional limit of this Court.

10.      This Court has personal jurisdiction over Defendant COLA in that it was, at all relevant periods of time covered by this complaint, a political subdivision of the State of California maintaining all of its places of business in the County of Los Angeles.

11.      Venue in this Court is proper in that, upon information and belief, Defendants reside in the County of Los Angeles.

12.      All the harm suffered by Plaintiff took place within this judicial district.

### The Plaintiff

13.      Plaintiff was, at all relevant periods of time covered by this complaint, an inmate at the Men's Central Jail located at 441 Bauchet Street, Los Angeles, CA 90012.

### The Defendants

14.      Defendant COLA is a public entity who maintains a place of business, where it incarcerated Plaintiff at 441 Bauchet Street, Los Angeles, CA 90012.

### Relationship Between the Defendants

15.      Plaintiff is informed and believes, and thereupon alleges, that Defendants, and each of them, were at all times mentioned herein the agents, servants, and employees of each other, or otherwise were acting with the full knowledge and consent of each other.  Plaintiff is further informed and believes, and upon such basis and belief alleges, that in doing all the things alleged in this complaint, Defendants, and each of them, were acting within the scope and authority of their agency, servitude, or employment, and were acting with the express and/or implied knowledge, permission, and consent of one another. Plaintiff is further informed and believes, and upon such basis and belief alleges, that Defendants learned of, ratified, and/or approved the wrongful conduct of its agents and/or employees identified in this Complaint as having engaged in wrongful conduct.

16.      Plaintiff is informed and believes, and thereupon alleges, that at all relevant times, Defendants, and each of them, were business entities or individuals who owned, controlled, or

**UNLIMITED COMPLAINT FOR DAMAGES**

1   managed the business which has damaged Plaintiff, and are each therefore jointly, severally, and

2   individually liable to Plaintiff.

3         17.      Plaintiff is informed and believes, and thereupon alleges, that at all relevant times,

4   Defendants, and each of them, were in some fashion, by contract or otherwise, the successor,

5   assignor, indemnitor, guarantor, or third-party beneficiary of one or more of the remaining

6   Defendants, and at all relevant times to Plaintiff's claims alleged herein, were acting within that

7   capacity. Plaintiff further alleges that Defendants, and each of them, assumed the liabilities of the

8   other Defendants, by virtue of the fact that each to some degree, wrongfully received and/or

9   wrongfully benefited from the flow of assets from the other Defendants to the detriment of Plaintiff.

10  Plaintiff further alleges that by wrongfully receiving and/or benefiting from Defendants' assets, and

11  in the consummation of such transactions, a *de facto* merger of the Defendants, and each of them,

12  resulted, such that Defendants, and each of them, may be treated as one for purposes of this

    Complaint.

13        18.      Plaintiff is informed and believes, and thereupon alleges, that at all relevant times

14  mentioned herein, Defendants, and each of them, were the partners, agents, servants, employees,

15  joint venturors, or co-conspirators of each other defendant, and that each defendant was acting

16  within the course, scope, and authority of such partnership, agency, employment, joint venture, or

17  conspiracy, and that each defendant, directly or indirectly, authorized, ratified, and approved the

18  acts of the remaining Defendants, and each of them.

19                              **Factual Allegations**

20        19.      Plaintiff is a pretrial detainee in the custody of the County of Los Angeles under

21  booking number 3896208. At the times before he suffered the grievous and life-shattering injury set

22  forth in this Complaint, and during the time he suffered the same, Plaintiff was housed in the Men's

23  Central Jail, 441 Bauchet St., Los Angeles CA 90012-2906, Tier 4400, block CJ, cell A0007. After

24  Plaintiff suffered the terrible injury at issue in this lawsuit, he was eventually housed in the

25  LAC+USC Medical Center, 1200 N. State Street, Inpatient Tower, Los Angeles, CA 90033, where

    he remains to this day as a pretrial detainee.

26        20.      Before Plaintiff suffered the permanent, irreversible, and life-altering injuries at issue

27  in this lawsuit, he was a healthy, approximately 37-year-old man with physical sensation and

28

                                      4

1  without paralysis who could walk, speak, communicate with others, and was not trapped in his body,

2  fully conscious, yet unable to interact with the world.

3    21.    On or about December 14, 2020, while Plaintiff was in the custody of the County of

4  Los Angeles as a pretrial detainee at Men's Central Jail, Plaintiff suffered a traumatic blow to the

5  head. This blow to the head caused Plaintiff to crumple to the ground in his cell, laying there

6  unresponsive and in a manner obviously meriting immediate medical attention, even to the medical

7  layman. Plaintiff's medical emergency was obvious, conspicuous, and necessitated immediate

8  medical attention.

9    22.    Because Plaintiff suffers from locked in syndrome, as detailed in the following

10  paragraphs, Plaintiff is unable to communicate and as such alleges as follows, in the alternative: (1)

11  Plaintiff was struck on the head by custody staff at Men's Central Jail, without provocation by

12  Plaintiff and in response to no threat to officer safety; (2) Plaintiff was struck on the head by a fellow

13  inmate at Men's Central Jail, where custody staff failed to segregate Plaintiff from his aggressor,

14  after custody staff knew or should have known that Plaintiff was at substantial risk of being beaten

   by his aggressor.

15    23.    This blow to the head went untreated and ignored by custody and medical staff at the

16  Men's Central Jail for a period of time in excess of three hours, despite the custody staff being

17  mandated by California Code of Regulations, Title 15, section 1027.5, to perform hourly safety

18  checks of inmates, including Plaintiff. Jailers at the Men's Central Jail failed to comply with Title

19  15, section 1027.5 and did not check on Plaintiff to ensure his health and wellbeing on at least an

20  hourly basis. In the alternative, jailers at the Men's Central Jail performed Title 15 safety checks on

21  Plaintiff, observed his ongoing medical emergency and need for immediate medical care, and

22  ignored it for a period in excess of three hours, after Plaintiff failed to respond to one or more

23  inquiries by custody staff that probed Plaintiff's consciousness, health and/or wellbeing.

24    24.    During the 3+ hours Plaintiff remained on the floor of his cell after suffering a

25  debilitating blow to the head, Plaintiff's medical situation went from emergent to irreversible and

26  life-altering. The blunt force of the blow to Plaintiff's head caused a pontine-ischemic stroke, which

   went completely untreated while Plaintiff languished on the floor of his cell.

27    25.    Eventually, far too late to prevent the grievous injuries Plaintiff now suffers from,

28  someone at Men's Central Jail called for medical assistance, reporting that Plaintiff was undergoing

**UNLIMITED COMPLAINT FOR DAMAGES**

seizures. On or about December 14, 2020, Plaintiff was admitted to LAC+USC Medical Center, where he was attended to at the Emergency Department. Doctors there diagnosed a major stroke in the central part of his brain, total paralysis, and what modern medicine calls "locked in syndrome."

26.     Locked in syndrome is a permanent and irreversible personal hell in which the afflicted person is trapped inside the body, completely paralyzed and unable to communicate, but fully conscious, awake, and alert, with a rich internal mental life, tormented by paralysis, lack of basic bodily functions without medical assistance, and a complete or almost total lack of personal expression. A person with locked in syndrome has desires, aims, goals, thoughts, and opinions, and yet is unable to achieve or express them. A person with locked in syndrome is a powerless subject of his or her environment, unable to affect it in any meaningful way, and is unable to exercise his or her will. Yet, the person with locked in syndrome retains the full cognitive and volitional capacity of a healthy human being. Thus, a person with locked in syndrome cannot meet his or her needs, be they physical, psychological, or otherwise, but is at the same time capable of understanding his or her needs, and his or her total practical impotence. The result is endless torment that the afflicted person knows will last the rest of his or her life.

27.     At this time, Plaintiff suffers from locked in syndrome and can move only his eyes and answer yes or no questions thereby. Plaintiff can breathe in a limited capacity on his own but has a breathing tube in his throat to aid his breathing. By the normal operation of his body, Plaintiff secretes matter into this tube, which requires cleaning by suction every 1-4 hours. If plaintiff's breathing tube is not suctioned clean, he will choke on his own secretions. Plaintiff is unable to eat or feed himself and is fed by means of a special nutrient formula through a feeding tube surgically inserted into his stomach. Plaintiff has a tube inserted into his bladder to drain urine because he is unable to urinate on his own. Plaintiff is kept on a special bed designed to decrease pressure on his body to prevent bed sores because he is unable to move himself. Plaintiff must be turned every 2 hours to prevent bed sores.

28.     Plaintiff's prognosis is poor. There is a low expectation for even a limited recovery.

29.     If Plaintiff had been provided the immediate medical care he required, he would not suffer from locked in syndrome.

30.     Plaintiff additionally alleges the following, in the alternative: (1) if Plaintiff had not been struck on the head by custody staff at Men's Central Jail, he would not have suffered the harms

**UNLIMITED COMPLAINT FOR DAMAGES**

1    set forth in this Complaint; (2) if Plaintiff had been adequately protected and not struck on the head

2    by a fellow inmate at Men's Central Jail, he would not have suffered the harms set forth in this

3    Complaint.

4        31.    On or about March 26, 2021, Dr. Shazia Kahn, MD of LAC+USC Medical Center,

5    1200 N. State Street, Inpatient Tower, 2nd Floor, Room C2K100, Los Angeles, CA 90033, sent a

6    letter to Hon. Richard M. Goul, Judge of the Los Angeles County Superior Court, Dept. S21, Gov.

7    George Deukmejian Courthouse, 275 Magnolia Ave., Long Beach, CA 90802, describing Plaintiff's

8    medical diagnosis and prognosis. A true and correct copy of this letter is attached hereto as **Exhibit**

     **1**. This letter was filed with the Court on or about April 1, 2021.

9                    **No Claims Arising from Privileged Conduct**

10       32.    In the avoidance of doubt, Plaintiff does not herein allege any claim for damages as

11   against Defendants for any privileged action, such as the conducting of an investigation by a public

12   entity. Plaintiff, however, reserves the right to claim all damages arising out of *consequences or*

13   *actions* resulting from, or occasioned by, such a privileged investigation by a public entity.

14       33.    Plaintiff expressly excludes from this Complaint any privileged act by any Defendant

15   to this action that would otherwise result in a Special Motion to Strike pursuant to Code Civ. Proc.

16   § 425.16.

17              **Public Entity Liability for Wrongful Acts of Its Employees**

18       34.    Pursuant to Gov. Code § 815.2, Defendant COLA is liable for injury proximately

19   caused by acts or omissions of its employees within the scope of their employment if the act or

20   omission would, apart from this section, have given rise to a cause of action against that employee

21   or his personal representative. Plaintiff heretofore alleges that the wrongful acts by Defendants

22   DOES 1-99, inclusive, caused the injuries to her as set forth in this complaint, in that these acts or

23   omissions would have given rise to a cause of action against them and in favor of Plaintiff,

24   independent of Gov. Code § 815.2.

25       35.    Further, pursuant to Gov. Code § 820, Defendants DOES 1-99, inclusive, are liable

26   for injuries caused by their acts or omissions to the same extent as a private person. Plaintiff further

27   alleges that Defendants DOES 1-99, inclusive, caused her injuries, as set forth in his complaint, and

28   are therefore liable to her for damages arising out of those injuries as authorized by Gov. Code §

     820.

**UNLIMITED COMPLAINT FOR DAMAGES**

**Exhaustion of Administrative Remedies**

36.     Plaintiff presented a Government Tort Claim to COLA on <u>March 31, 2021</u>. COLA denied the claim on <u>May 20, 2021,</u> by means of a letter of the same date. This lawsuit has thus been timely brought as authorized by Gov. Code § 945.6(a)(1). True and correct copies of Plaintiff's Government Tort Claim and the County's rejection letter are attached hereto as **<u>Exhibit 2</u>**.

**FIRST CAUSE OF ACTION**

**Excessive Force – 42 U.S.C. § 1983 – 14th Amendment, U.S. Const. / 4th Amend, U.S. Const.**

**(Against All Individual Defendants)**

37.     Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

38.     DOES 1-10 are jailers responsible for Plaintiff when Plaintiff was at Men's Central Jail.

39.     On or about December 14, 2020, DOES 1-10 beat plaintiff on the head, causing his injuries.

40.     When DOES 1-10 beat plaintiff on the head, causing his injuries, they were not acting in response to any threat to officer safety.

41.     When DOES 1-10 beat plaintiff on the head, causing his injuries, they were not acting in response to any provocation by Plaintiff.

42.     By beating Plaintiff on the head in response to no provocation and not in response to any threat to officer safety, DOES 1-10 caused Plaintiff's injuries.

43.     DOES 1-10 acted under color of California law at all times relevant to this lawsuit.

44.     DOES 1-10 deprived Plaintiff of his rights guaranteed by the 14th Amendment of the United States Constitution in acting as set forth in this Complaint.

45.     DOES 1-10 deprived Plaintiff of his rights guaranteed by the 4th Amendment of the United States Constitution in acting as set forth in this Complaint.

46.     Plaintiff pleads this cause of action in the alternative to his Second Cause of Action.

//

**8**

**UNLIMITED COMPLAINT FOR DAMAGES**

**SECOND CAUSE OF ACTION**

**Failure to Protect – 42 U.S.C. § 1983 – 14th Amendment, U.S. Const.**

**(Against All Individual Defendants)**

47.     Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

48.     DOES 11-20 are jailers responsible for Plaintiff when Plaintiff was at Men's Central Jail.

49.     DOES 11-20 knew that Plaintiff was at substantial risk of being beaten by one of Plaintiff's fellow inmates at Men's Central Jail.

50.     DOES 11-20 intentionally failed to segregate Plaintiff from the inmate who beat him.

51.     DOES 11-20 could have, but did not, caused Plaintiff to be housed elsewhere in Men's Central Jail, away from the inmate who beat him.

52.     By failing to house Plaintiff away from the inmate who beat him, Does 1-10 caused Plaintiff's injuries.

53.     DOES 11-20 acted under color of California law in acting as set forth in this Complaint.

54.     DOES 11-20 deprived Plaintiff of his rights guaranteed by the 14th Amendment of the United States Constitution in acting as set forth in this Complaint.

55.     Plaintiff pleads this cause of action in the alternative to his First Cause of Action.

**THIRD CAUSE OF ACTION**

**Deliberate Indifference to Serious Medical Needs – 42 U.S.C. § 1983 – 14th Amendment, U.S. Const.**

**(Against All Individual Defendants)**

56.     Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

57.     DOES 21-30 are jailers responsible for Plaintiff when Plaintiff was at Men's Central Jail.

58.     DOES 21-30 intentionally failed to monitor Plaintiff's cell adequately.

**UNLIMITED COMPLAINT FOR DAMAGES**

59.     In the alternative to paragraph 51, DOES 21-30 observed Plaintiff crumpled on the floor of his cell, in medical distress obvious to the medical layman, and intentionally failed to call medical assistance for Plaintiff.

60.     DOES 21-30s' failure to monitor Plaintiff's cell adequately and/or failure to call medical attention for Plaintiff after observing him in open and obvious medical distress put Plaintiff at substantial risk of suffering serious harm.

61.     DOES 21-30 failed to take reasonable available measures to abate Plaintiff's substantial risk of suffering serious harm, alternatively: (1) monitoring Plaintiff's cell adequately in compliance with California Code of Regulations, Title 15, section 1027.5, or (2) calling medical assistance for Plaintiff upon observing him in open and obvious medical distress.

62.     By failing to take reasonable available measures to abate Plaintiff's substantial risk of suffering serious harm, DOES 21-30 caused Plaintiff's injuries.

## FOURTH CAUSE OF ACTION

**Public Entity Liability – 42 U.S.C. § 1983 – 14th Amendment, U.S. Const. / 4th Amendment, U.S. Const.**

**(Against Defendant County of Los Angeles)**

63.     Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

64.     The individual defendants beat Plaintiff on the head, and later ignored his medical needs, causing him to suffer from locked in syndrome.

65.     In the alternative, the individual defendants intentionally failed to monitor Plaintiff's cell adequately, causing him to suffer from locked in syndrome.

66.     In the alternative, the individual defendants observed Plaintiff crumpled on the floor of his cell, in medical distress obvious to the medical layman, and intentionally failed to call medical assistance for Plaintiff, causing him to suffer from locked in syndrome.

67.     The individual defendants' failure to monitor Plaintiff's cell adequately and/or failure to call medical attention for Plaintiff after observing him in open and obvious medical distress put Plaintiff at substantial risk of suffering serious harm.

68.     The individual defendants failed to take reasonable available measures to abate Plaintiff's substantial risk of suffering serious harm, alternatively: (1) monitoring Plaintiff's cell

**UNLIMITED COMPLAINT FOR DAMAGES**

adequately in compliance with California Code of Regulations, Title 15, section 1027.5, or (2) calling medical assistance for Plaintiff upon observing him in open and obvious medical distress.

69.     By failing to take reasonable available measures to abate Plaintiff's substantial risk of suffering serious harm, DOES 21-30 caused Plaintiff's injuries.

70.     The individual defendants acted under color of law at all times relevant to this action.

71.     The individual defendants acted in the course and scope of their employment as Los Angeles County Sheriff's Deputies or other LASD or County of Los Angeles employees at all times relevant to this litigation.

72.     Defendant County of Los Angeles has a decades-long and sordid history of inmate deaths and injuries in its jails, caused by failure to take corrective action to prevent the failure to properly provide reasonable security to inmates from one another, batteries by jailers, and failure to provide adequate medical care in its jails. This history is known to Alex Villanueva, the elected Sheriff during the times relevant to this action, just as it was known to his elected predecessors. Like his predecessors, Sheriff Villanueva has not taken action sufficient to curb or even meaningfully reduce the decades-long trend of violence, brutality, and callous disregard for human life that is by now a commonplace in the jails administered by the Los Angeles County Sheriff's Department. In that respect, the brutality and disregard for human life that caused Plaintiff to become consigned to the lifelong, personal hell of locked in syndrome is the official policy of the County of Los Angeles for purposes of *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Because the County of Los Angeles Sheriff's Department is aware of the decades-long history of inmate abuse at is jails, and yet the abuse continues to this day, it has failed to train its deputies for purposes of *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). Moreover, Plaintiff is informed and believes that to the extent that the circumstances of his life-altering injuries have been investigated by the County of Los Angeles, either through the Sheriff's Department or otherwise, the County found no wrongdoing on the part of any Sheriff's deputy or other County employee. This constitutes ratification for purposes of *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). In the avoidance of doubt, Plaintiff proceeds against the County of Los Angeles in his municipal liability claim on the theories of *Monell*, *City of Canton*, and *Praprotnik*.

/ / /

**A brief history of the ongoing abuse of prisoners in County of Los Angeles Jails that can only be fairly described as the official policy of the County of Los Angeles**

73.    Beginning as early as June 1996, the United States Justice Department initiated its inquiry into the conditions and operation of the County of Los Angeles jails. On September 5, 1997, the DOJ gave the Sheriff's Department, the County of Los Angeles, and former Sheriff Leroy Baca clear and unmistakable notice of constitutionally deficient jail conditions, reporting its findings of continued and serious patterns of constitutional violations, abuses of inmates by LASD employees, and deliberate indifference to inmate-on-inmate violence and deaths in the jails. Sheriff Baca and the Sheriff's Department's Executive Council reviewed the DOJ's findings and conclusions related to the mismanagement of the Custody Division, the agency of the Sheriff's Department responsible for managing the County of Los Angeles jails. Despite these findings, the constitutional violations, abuse, and deliberate indifference continues unabated.

74.    In 1999, under threat of litigation against the Sheriff and County of Los Angeles by the United States DOJ, the Sheriff's Department and the County of Los Angeles submitted to a Memorandum of Understanding with the Department of Justice designed to curb the pattern and practice of jail abuses and constitutional violations which required former Sheriff Baca, the Sheriff's Department, and the County to recognize, address, and remedy the dangerous conditions in the County jails. Former Sheriff BACA personally executed the Memorandum of Understanding and represented he would ensure compliance by the Sheriff's Department. He did not do so. In 2006, after years of DOJ monitoring the County's compliance with the MOU, the DOJ issued a report recounting the County's continuing failure and refusal to correct the unconstitutional pattern and practices that still afflict the County jails. Former Sheriff Baca and former Assistant Sheriff Cecil Rhambo received and read the 2006 DOJ report yet continued to refuse to implement policies that would abate the prisoner abuse in the County jails.

75.    On July 6, 2002, inmate Ramon Gavira was severely beaten by a Deputy Sheriff and was killed in his cell. In the investigation into that murder, Deputies and jail staff testified that they had not been subjected to an investigation or disciplined for lapses in supervision of Gavira nor for the physical abuse to which County employees subjected Gavira to in custody. Former Sheriff Baca was personally advised of these employee admissions and took no action of any kind to discipline, reprimand or prosecute any responsible employees. Sheriff Villanueva, the elected sheriff at all

**UNLIMITED COMPLAINT FOR DAMAGES**

1  times relevant to this action, has not made any meaningful policy change. According to official

2  County policy, murder is legal and even morally correct if the killer is a Deputy and the victim is an

3  inmate.

4        76.    On March 22, 2003, former Sheriff Baca was made aware that Hispanic inmate

5  gangs were attacking Black inmates and that the County jails were failing to provide reasonable

6  security for such inmates. As a consequence, inmates Ahmad Burrel, Rory Fontanelle, and Aaron

7  Cunningham were violently assaulted and injured by fellow inmates. Despite this knowledge,

8  neither former Sheriff Baca nor the County took any remedial action to address the obvious issues

9  of inmate security. Sheriff Villanueva has made no meaningful policy change.

10       77.    On October 21, 2003, inmate Ki Hong was killed by inmates while in custody.

11  Former Sheriff Baca was alerted to the serious deficiencies that caused Hong's death, but neither

12  he, the County, or the Sheriff's Department did anything to address this murder, plotting another

13  point on the policy curve that murder is legal and permitted if the victim is a County inmate. Hong's

14  homicide became the first of 5 more inmate-on-inmate homicides in the subsequent six months.

    Sheriff Villanueva has failed to make any meaningful policy change.

15       78.    On December 6, 2003, inmate Prendergast was violently attacked by fellow inmates

16  *for a period of several hours*. Custody staff on duty, including supervisors, refused to prevent the

17  violence or intervene. They were not prosecuted or disciplined by the County. Sheriff Villanueva

18  has refused to make any meaningful policy change. The official policy of the County of Los Angeles

19  is that inmate-on-inmate violence, even violence that lasts for hours at a time, is permitted and is a

20  simple fact of jail life, despite the prohibition of punitive conditions for pretrial detainees in jail. *See*

21  *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386,

22  395 n. 10 (1989).

23       79.    On December 9, 2003—a mere three days after the Prendergast brutality—inmate

24  Mario Alvarado, aka Victor Cortez, was murdered by inmates while in County custody. *Assailants*

25  *were left without oversight or supervision for a period of time long enough to allow them to conceal*

26  *Alvarado's corpse*. The County investigated this murder and refused to discipline any County

27  employee; no employee was prosecuted. Sheriff Villanueva has failed to make any meaningful

    policy change to address this issue.

28

**UNLIMITED COMPLAINT FOR DAMAGES**

80.     On December 13, 2003, Los Angeles County Sheriff's Department Deputies falsified the contents of reports relating to Jose Beas. Beas admitted sex crimes against children, which, by the Sheriff's Department policies, required that he be segregated from the general population. But County custody employees instead put him in the jails' general population, where fellow inmates predictably attacked him with extreme severity, causing brain damage. The County approved a civil settlement with respect to this violence, but failed to hold any employee responsible for the blatant and purposeful disregard for Beas's safety, and pretrial punishment in violation of the 14th Amendment. Sheriff Villanueva has failed to make any meaningful policy change to address this issue.

81.     On January 12, 2004, inmate Kristopher Faye was killed by other inmates in County custody. Deputies responsible for keeping cell gates closed failed to do so, facilitating this murder. Inmates with recognized propensities for violence were housed with nonviolent inmates; moreover, the Sheriff's Department was made aware of this inmate misclassification and took no action to discipline or prosecute any County employee responsible for Faye's murder. Sheriff Villanueva has failed to make any meaningful policy change to address this issue.

82.     On April 20, 2004, inmate Raul Tinjero was murdered in his cell by inmate Santiage Pineda. Pineda had a known history of violence in the jails, which Sheriff's Department personnel ignored. Such personnel allowed Pineda to kill Tinjero *even though Tinjero and Pineda were required to be separated*. The Sheriff's department was made aware of Tinjero's murder and failed to take any appropriate measures against any of the jailers responsible for Tinjero's murder. Sheriff Villanueva has failed to make any meaningful policy change to address this issue.

83.     On May 23, 2004, inmate Antonio Fernandez was killed by other inmates while in custody at the County of Los Angeles jail. The homicide investigation disclosed that the deputy assigned to monitor Fernandez's dormitory abandoned her post during the time Fernandez was murdered. The Sheriff's Department was made aware of this murder yet failed to take any remedial, disciplinary, or prosecutorial action against the Deputies who caused Fernandez's death. Sheriff Villanueva has failed to make any meaningful policy change to address this issue.

84.     On October 24, 2005, inmate Chadwick Shane Cochran was booked and in custody for a nonviolent misdemeanor and housed in the mental health facility of the County jails. On November 16, 2005, Cochran was erroneously housed in the general population, wearing a red

**UNLIMITED COMPLAINT FOR DAMAGES**

identification bracelet. This caused other inmates to beat him to death. During the beating, custody Deputies abandoned their posts. No deputy responsible for Cochran was disciplined in any way.

85.     In 2007, the Office of Independent Review, acting as special counsel to former Sheriff Baca and his command staff, notified them that Sheriff's Deputies were abandoning their jail posts, sleeping on the job, failing to follow protocols, failing to conduct timely Title 15 safety checks, fraudulently doctoring jail records to misrepresent timely Title 15 safety checks, leaving inmates unsupervised, and facilitating inmate-on-inmate violence. Plaintiff is informed and believes that the County took no disciplinary action against any of the offending Deputies.

86.     In September 2012, the Report of the Citizens Commision on Jail Violence found that the Sheriff's Department's oversight of the jails had proven over the years to be abysmal, noting repeated failures to attend to repeated notifications that preventable violence was going unabated, and failures to take measures to ensure the safety of inmates from one another or from Deputies. The Commission specifically found that "[t]he Sheriff failed to monitor and control the use of force in Los Angeles County jails," that "LASD senior management failed to investigate the excessive uses of force problems at Men's Central Jail," and specifically faulted former Assistant Sheriff Rhambo for mismanaging the jails and failing to hold Deputies responsible for violations accountable. Sheriff Villanueva has failed to make any meaningful policy change to address this.

87.     From 2013 through 2018, inmate-on-inmate assaults rose 31%. This alarming trend of inmate-on-inmate violence was one of many criticisms that Sheriff Villanueva levied against his predecessor Jim McDonnel: https://www.kcrw.com/news/shows/press-play-with-madeleine-brand/la-sheriff-alex-villanueva-on-his-mistakes-and-whats-next; https://www.kcrw.com/news/shows/press-play-with-madeleine-brand/la-sheriff-alex-villanueva-on-his-mistakes-and-whats-next/la-sheriff-alex-villanueva-on-his-mistakes-and-violence-at-the-county-jail. Yet Sheriff Villanueva has failed to make any meaningful policy change to address this issue. Indeed, he has been criticized for trying to undermine the investigation and sanctioning of deputies, going as far as hiring disgraced former Deputy Caren "Carl" Mandoyan, who was fired in 2016 for domestic abuse and stalking. Moreover, Sheriff Villanueva has operated a secret commission for the purpose of rehiring the few deputies who have been fired for on-duty misconduct. *See* https://www.latimes.com/opinion/editorials/la-ed-sheriff-villanueva-truth-reconciliation-20190309-story.html.

15

**UNLIMITED COMPLAINT FOR DAMAGES**

88.     In January 2013, the County settled *Alarcon v. County of Los Angeles*, No. BC45877 (Los Angeles County Sup. Ct. January 8, 2013), in which a deputy punched Alejandro Alarcon in the face without provocation while Alarcon was being booked for drunk driving. Plaintiff is informed and believes that no deputy was disciplined for this misconduct.

89.     In May 2014, in *Mancilla v. County of Los Angeles*, No. 12-1342 (C.D. Cal. May 19, 2014), the County settled a case in which Cesar Mancilla was beaten brutally, without provocation, by Sheriff's Deputies at the jail facility known as the Inmate Reception Center, resulting in multiple facial fractures, a broken nose, four broken teeth, multiple rib fractures, a collapsed lung, cauliflower ear, multiple contusions and lacerations, and pepper spray burns to the eyes and skin. Deputies additionally left Mancilla in his cell without food or water, *refused to provide him with medical attention*, and when Mancilla was eventually hospitalized for the injuries the Deputies inflicted, prevented his mother from visiting him in an effort to cover up their crimes. Plaintiff is informed and believes that no deputy was disciplined for this misconduct.

90.     In May 2014, in *Rodriguez v. County of Los Angeles*, No. 10-6342 (C.D. Cal. May 29, 2014), a jury determined that Sheriff's Deputies used excessive force to remove inmates from their cells. Plaintiff is informed and believes that no deputy was disciplined for this misconduct.

91.     In December 2014, in *Griscavage a/k/a Archambeau v. County of Los Angeles*, No. 12-10721 (C.D. Cal. December 16, 2014), the County settled a case in which Derek Griscavage a/k/a Derik Archambeau had the corners of his eyes split open, his nose broken, the top of his left ear lacerated, and a tooth chipped by Los Angeles County Sheriff's Deputies Jermaine Jackson, Jayson Ellis, Karin Cringa, Cynthia Esparza, and others, who beat Griscavage *while he was in jail, restrained, with his hands cuffed behind his back. After the Deputies beat Griscavage, they refused to summon medical care for him.* Plaintiff is informed and believes that none of these deputies were disciplined for their misconduct.

92.     In January 2016, in *Guenther v. County of Los Angeles*, No. BC543601 (Los Angeles County Sup. Ct. January 12, 2016) the County of Los Angeles settled a case in which decedent Kurt Guenther died by suicide in a County of Los Angeles jail, where he hanged himself after the County failed to provide adequate mental health care to Guenther, including failing to place him on suicide watch, failing to monitor his cell, placing him in an isolation cell, failing to provide him with adequate mental health treatment, and failing to remove items from his cell that

**16**

1    he could use to kill himself. No County employee responsible for Guenther was disciplined in

2    relation to Guenther's death.

3         93.    In March 2016, in *Aguirre v. County of Los Angeles*, No. 9-6222 (C.D. Cal. March

4    1, 2016), the County of Los Angeles settled a case in which Jose Aguirre was beaten and pepper

5    sprayed by Sheriff's Deputies without provocation *while handcuffed in the jail shower*, causing a

6    fractured orbital bone, as bloody nose, and cuts to his left shin and right hip. Plaintiff is informed

7    and believes that none of these deputies were disciplined for their misconduct.

8         94.    In November 2016, in *Edwards v. County of Los Angeles*, No. 15-2553 (C.D. Cal.

9    November 9, 2016), the County of Los Angeles settled a case for $1.25 million, where Sheriff's

10   Deputies murdered inmate Earl Lee Johnson by beating him so severely that they fractured his

11   skull. After Johnson lost consciousness, the deputies responsible for his murder hanged him by a

12   sheet in an unsuccessful effort to cover up the beating. Plaintiff is informed and believes that no

     deputy responsible for Johnson's murder was disciplined for it.

13        95.    In August 2017, in *Rosales v. County of Los Angeles*, No. 12-3852 (C.D. Cal.

14   August 15, 2017), the County of Los Angeles settled a case in which Jorge Rosales died in County

15   custody after developing acute pancreatitis caused by inadequate medical care and being struck in

16   the face, head, and abdomen, and left to die in his cell for a period of two days, during which the

17   Deputies responsible for Rosales failed to summon medical care for him. Plaintiff is informed and

18   believes that no deputy responsible for Rosales was disciplined for this misconduct.

19        96.    On January 18, 2018, inmate Tony Joseph Evan was brutally battered by inmate

20   Franklin Reveter, a known violent inmate. Evan died from his injuries on August 20, 2018. No

21   County employee responsible for Evan or Reveter was disciplined, prosecuted, or even offered

22   remedial training. It is and remains official policy of the County of Los Angeles that its jails inflict

23   punitive conditions on the pretrial detainees housed there, in flagrant violation of the 14th

24   Amendment.

25        97.    In February 2018, in *Bloomgarden v. County of Los Angeles*, No. 11-9449 (C.D. Cal.

26   February 5, 2018), the County of Los Angeles settled a case in which Deputies at the Twin Towers

27   jail destroyed Howard Bloomgarden's Torah, and damaged his prayer books and yarmulke. When

28   Bloomgarden protested, a Deputy kicked his leg above his ankle and forced him to sit in a puddle

that had accumulated on the jail floor. Plaintiff is informed and believes that no deputy was disciplined for this misconduct.

98.     On July 14, 2018, inmate Wesly Alarcio was brutally beaten into a permanent vegetative state—a fate more merciful than plaintiff's locked in syndrome—by inmate Kyler Austin Grey, a known violent predator with whom Alarcio was recklessly and improperly housed. No County employee responsible for Alarcio or Grey was disciplined, prosecuted, or even offered remedial training. It is and remains official policy of the County of Los Angeles that its jails inflict punitive conditions on the pretrial detainees housed there, in flagrant violation of the 14th Amendment.

99.     On September 10, 2018, Special Counsel Merrick Bobb presented to the County of Los Angeles a report that found inmate abuse at County jails and reported that the County jails are "understaffed [and] riddled with security flaws that jeopardize[] the lives of guards and inmates." Bobb's report criticizes the jail for failing to prevent dangerous inmates from being housed with lower-risk inmates, and that the jails suffer from "lax supervision and *long-standing jail culture that has shortchanged accountability for inmate safety and security*," (emphasis added). The County and Sheriff's Department have done nothing to address Bobb's report.

100.     In October 2019, in *Lanier v. Los Angeles County*, No. 17-9019 (C.D. Cal. October 1, 2019), the County of Los Angeles settled a case in which Deputies at the Twin Towers jail slammed 60-year-old Gregory Lanier's face into a table at Twin Towers jail after Lanier asked to see a nurse before leaving for court because he was feeling dizzy. Lanier had not been provided with his blood pressure medication since he was admitted to the jail, and informed the Deputies of this. In response, they placed him in an isolation module. Lanier asked to speak to a sergeant, and explained that he was feeling dizzy and had not been given his blood pressure medication. In response, a Deputy grabbed Lanier's right arm, placed his left hand on the back of Lanier's head, and slammed the 60-year-old man's face into a metal table, causing a split lip, broken tooth, and back pain. Plaintiff is informed and believes that no deputy responsible for this misconduct was disciplined for it.

101.     In October 2019, in *Smith v. County of Los Angeles*, No. 18-4214 (C.D. Cal. October 29, 2019), the County of Los Angeles settled a case in which jailer Deputy Giancarlo Scotti exposed himself to inmate Pauline Smith, demanded to see her breasts, groped her, forced her to masturbate

1  him, and threatened to "make things worse for her" if she did not comply. Scotti later forced himself

2  on Smith on several other occasions. Scotti committed these crimes after having been put on

3  employment probation for similar acts, yet the County continued to allow Scotti to supervise female

4  inmates.

5        102.    In August 2020, in *Gallo v. County of Los Angeles*, No. 18-0008 (C.D. Cal. August

6  3, 2020), the County of Los Angeles settled a case in which inmate Anthony Gallo, Jr. was beaten

7  by other inmates, suffering multiple lacerations to his head, face, and upper body, and suffered a

8  crushed heel and ankle when he jumped from one tier of his cell block to a lower one in order to

9  escape the beating. Deputies Anthony Miller, Stephan Christopher, and Gustavo Torres Jr.

10  deliberately misclassified Gallo for general population and failed to protect him, in order to allow

11  the inmates who attacked him, who were members of a gang that Gallo used to belong to, to have

   access to Gallo and an opportunity to attack him.

12        103.    The only fair-minded conclusion from the foregoing is that the Department's official

13  policy is that jail should be punitive, despite the well-established principle of law that the 14th

14  Amendment "protects a pretrial detainee from . . . punishment." *Kingsley v. Hendrickson*, 576 U.S.

15  389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).

16  **FIFTH CAUSE OF ACTION**

17  **Bane Act (Civ. Code § 52.1) – 14th Amendment, U.S. Const. / 4th Amendment, U.S. Const.**

18  **(Against All Individual Defendants)**

19        104.    Plaintiff realleges, and incorporates herein by their reference, each and every

20  allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.

21        105.    DOES 1-30 are jailers responsible for Plaintiff when Plaintiff was at Men's Central

22  Jail.

23        106.    DOES 1-30 interfered with or attempted to interfere with Plaintiff's rights under the

24  14th Amendment and/or the 4th Amendment to the United States Constitution by means of threat, intimidation, or coercion, as set forth in this Complaint.

25        107.    Such interference caused Plaintiff's harms.

26  / / /

27

28

**UNLIMITED COMPLAINT FOR DAMAGES**

**SIXTH CAUSE OF ACTION**

**Gov't Code § 845.6**

**(Against All Individual Defendants)**

108.    Plaintiff realleges, and incorporates herein by their reference, each and every allegation contained in the foregoing Paragraphs, inclusive, as though fully set forth herein.  Further, all allegations set forth in this cause of action are pled upon information and belief, unless otherwise stated.

109.    DOES 1-30 are jailers responsible for Plaintiff when Plaintiff was at Men's Central Jail.

110.    DOES 1-30 were acting within the scope and course of their employment at all times relevant to this lawsuit.

111.    DOES 1-30 knew or had reason to know that Plaintiff was in need of immediate medical care on or about December 14, 2020.

112.    DOES 1-30 failed to take reasonable action to summon immediate medical care for Plaintiff on or about December 14, 2020.

113.    DOES 1-30 thereby caused Plaintiff's injuries.

/ / /

/ / /

/ / /

**UNLIMITED COMPLAINT FOR DAMAGES**

1

**PRAYER FOR RELIEF**

2
 WHEREFORE, Plaintiff prays for judgment as against Defendants as follows, for:

3
1) Compensatory damages in an amount according to proof at time of trial.

4
2) Attorney's fees and costs pursuant to all applicable statutes or legal principles, including,

5
but not limited to: 42 U.S.C. § 1988, Code Civ. Proc. § 1021.5, Civ. Code §§ 52.1, 52.

6
3) Costs of suit incurred.

7
4) Civil penalties as permitted by statute.

8
5) Prejudgment interest on all amounts claimed as permitted by law.

9
6) All other general, specific, direct, indirect, consequential, and incidental damages, in an
amount according to proof at time of trial.

10

7) Such other and further relief as the Court may deem proper.

11

12

**ROMERO LAW, APC**

13

14
DATED: August 11, 2021   By:

15
              **Alan Romero (SBN 249000)**

16
              **Edward Wells (SBN 321696)**
              **Attorneys for Plaintiff**

17
              **HOWARD WILLIAMS**

18

19

**DEMAND FOR JURY TRIAL**

20
 Plaintiff hereby makes demand for Jury Trial, and has concurrently posted the jury fee

21
deposit.

22

**ROMERO LAW, APC**

23

24
DATED: August 11, 2021   By:

25
              **Alan Romero (SBN 249000)**

26
              **Edward Wells (SBN 321696)**
              **Attorneys for Plaintiff**

27
              **HOWARD WILLIAMS**

28

**UNLIMITED COMPLAINT FOR DAMAGES**

# EXHIBIT 1



**LAC+USC**
MEDICAL CENTER

Los Angeles County
Board of Supervisors

**Hilda L. Solis**
First District

**Mark Ridley-Thomas**
Second District

**Shelia Kuehl**
Third District

**Janice Hahn**
Fourth District

**Kathryn Barger**
Fifth District

**Bonnie Bilitch, RN, MSN**
Interim Chief Executive Officer

**Brad Spellberg, MD**
Chief Medical Officer

**Laura Sarff, RN**
Interim Chief Operating Officer

**Isabel Milan, RN**
Chief Nursing Officer

1200 N. State Street
Inpatient Tower (IPT)
2nd Floor, Room C2K100
Los Angeles, CA 90033

Tel: (323) 409-2800
Fax: (323) 441-8030

*To ensure access to high-
quality, patient-centered,
cost-effective health care to
Los Angeles County
residents through direct
services at DHS facilities and
through collaboration with
community and university
partners.*

March 26, 2021

The Honorable Judge Richard M. Goul
Judge of the Superior Court
Department S21, Governor George Deukmejian Courthouse
275 Magnolia Avenue
Long Beach, California 90802

CONFORMED COPY
ORIGINAL FILED
Superior Court of CSN
County of L?
APR 01 2021
Sherri R. Carter, Executi...
By: Lindsey Moses, Depu.y

Re: Howard A. Williams
   MRUN   DOB 10/01/1983

Dear Judge Goul,

Pt was initially admitted to LACUSC Medical Center on 12/14/20 after found having seizures in the jail.

He was brought to the LAC+USC Medical Center where workup was done in the ED. HW was found to have had a major stroke in the central part of his brain which has left him totally paralyzed and unable to move except for his eyes. This is also known as 'locked in syndrome' where someone is awake, alert, and aware but unable to communicate or move.

Prognosis for recovery: Per neurology: There is a low expectation for recovery of the ability to independently care for himself. Limited research shows that there in an increased likelihood of recovery to the point of ambulation only when there is improvement in muscle movements in the 1st 3 - 4 months after the stroke. This individual is young but has shown minimal improvement to date, decreasing expectation for even a limited recovery.

At this time, over 3 months after the stroke this individual is still paralyzed in all 4 extremities (quadriplegia) and has not been able to communicate.

Currently, as of 3/24/2021, he can:

1. Move his eyes. At times he can answer yes or no questions by blinking.
2. He can breathe on his own but has a tube in his throat to make it easier to breathe. Someone must suction secretions from this tube every 1-4 hours or he will choke on his own secretions.
3. He is unable to eat or feed himself. He is fed a special formula through a feeding tube surgically inserted into his stomach.
4. He has a tube inserted into his bladder to drain his urine as he is unable to urinate on his own.
5. He is on a special bed designed to decrease pressure on his body to prevent pressure sores on his body because he is unable to move himself. He must be turned every 2 hours to decrease pressure on any 1 part of his body to prevent bed sores.

Thank you for your attention to this matter.
For further information I can be reached at

Shazia Khan, MD
(o) 323-409-3816
(p) 213-203-0141
                    #A06856

**EXHIBIT 2**

# CLAIMS FOR DAMAGES
# TO PERSON OR PROPERTY

**COUNTY OF LOS ANGELES**

**INSTRUCTIONS:**

1. Read claim thoroughly.
2. Fill out claim as indicated; attach additional information if necessary.
3. Please use one claim form for each claimant.
4. Return this original signed claim and any attachments supporting your claim. This form **must** be signed.

DELIVER OR U.S. MAIL TO:
EXECUTIVE OFFICER, BOARD OF SUPERVISORS, ATTENTION: CLAIMS
500 WEST TEMPLE STREET, ROOM 383,
KENNETH HAHN HALL OF ADMINISTRATION, LOS ANGELES, CA 90012
(213) 974-1440

| TIME STAMP OFFICE USE ONLY |
| --- |
| BOARD OF SUPERVISORS COUNTY OF LOS ANGELES FILED |
| 2021 MAR 31  A 10: 11 |

**1.** [X] Mr. [ ] Ms. [ ] Mrs.  **LAST NAME** Williams  **FIRST NAME** Howard  **M.I.** A

**2. ADDRESS OF CLAIMANT**

CITY    STATE    ZIP CODE

HOME PHONE (626) 396-9900    ALTERNATE PHONE (626) 396-9900

**3. CLAIMANT'S BIRTHDATE:**

**4. CLAIMANT'S SOCIAL SECURITY NUMBER**

**5. ADDRESS TO WHICH CORRESPONDENCE SHOULD BE SENT**
80 S. Lake Avenue, Suite 880

STREET    CITY Pasadena    STATE CA    ZIP CODE 91101

**6. DATE AND TIME OF INCIDENT**
12/13/2020 11:59 pm

**7. WHERE DID DAMAGE OR INJURY OCCUR?**
441 Bauchet Street, Room 5000

STREET    CITY    STATE    ZIP CODE

**8. DESCRIBE IN DETAIL HOW DAMAGE OR INJURY OCCURRED AND LIST DAMAGES** (attach copies of receipts or repair estimates):

On either 12/13/20 or 12/14/20, Claimant suffered a traumatic injury to his head, believed to have been inflicted by a cellmate. The blunt force trauma resulted in pontine-ischemic stroke. Due to Claimant being left unattended and then deprived of lifesaving emergency medical care, Claimant is now suffering from Locked-In-Syndrome, and is in and out of consciousness, only sometimes being able to communicate by blinking. Doctors reported that Claimant is expected to be on life-support for the remainder of his life, and will not be able to survive without a breathing tube at all times.

**9. WERE POLICE OR PARAMEDICS CALLED?** YES [X] NO [ ]

(IF YES) AGENCY'S NAME LASD    REPORT # Unknown

CHECK IF LIMITED CIVIL CASE [ ]

TOTAL DAMAGES TO DATE $ 25,000,000.00    TOTAL ESTIMATED PROSPECTIVE DAMAGES $ 25,000,000.00

**10. WHY DO YOU CLAIM COUNTY IS RESPONSIBLE?**

If County employees had attended to Claimant in less than 3 hours of his injury, he could have received a TPA treatment which would have dissolved the blood clot and prevented the injury from becoming as serious and permanent as it is now due to inaction and lack of supervision or care. County employees failed to conduct adequate cell checks or otherwise take the minimal steps that would have resulted in the protection of Claimant's life and wellbeing, and failed to summon immediate medical care for Williams. The harm was caused, or allowed to be caused by, agent-employees of the County who failed to protect Claimant. If normal cell check and other required safety protocols had been followed, the injury to Claimant could have been avoided or substantially reduced in terms of permanent harm to Claimant. County is liable under Gov. Code §§ 815.2, 820, 845.6, and has optional duty to indemnify public employee under section 844.6(d); the negligent, reckless, or willful public employees are liable under section 844.6(d).

**11. NAMES OF ANY COUNTY EMPLOYEES (AND THEIR DEPARTMENTS) INVOLVED IN INJURY OR DAMAGE (IF APPLICABLE):**

| NAME | DEPARTMENT |
| --- | --- |
| Unknown | |
| NAME | DEPARTMENT |
| | |

**12. WITNESS(ES) TO DAMAGES OR INJURY: LIST ALL PERSONS AND ADDRESSES OF PERSONS KNOWN TO HAVE INFORMATION:**

| NAME | PHONE |
| --- | --- |
| Unknown | |
| ADDRESS | |
| NAME | PHONE |
| | |
| ADDRESS | |

**13. IF PHYSICIAN(S) WERE VISTED DUE TO INJURY, PROVIDE NAME, ADDRESS, PHONE NUMBER, AND DATE OF FIRST VISIT FOR EACH:**

| DATE OF FIRST VISIT | PHYSICIAN'S NAME | PHONE |
| --- | --- | --- |
| 12/14/2020 | Various Doctors | |
| STREET | | CITY     STATE   ZIP CODE |
| LA County-USC Hospital | | Los Angeles  CA  90033 |
| DATE OF FIRST VISIT | PHYSICIAN'S NAME | PHONE |
| STREET | | CITY     STATE   ZIP CODE |

---

**THIS CLAIM MUST BE SIGNED**

*NOTE: PRESENTATION OF A FALSE CLAIM IS A FELONY (PENAL CODE SECTION 72)*

**CLAIMS FOR DEATH, INJURY TO PERSON OR TO PERSONAL PROPERTY MUST BE FILED NOT LATER THAN 6 MONTHS AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)**

**ALL OTHER CLAIMS FOR DAMAGES MUST BE FILED NOT LATER THAN ONE YEAR AFTER THE OCCURRENCE. (GOVERNMENT CODE SECTION 911.2)**

| 14. PRINT OR TYPE NAME | DATE | 15. SIGNATURE OF CLAIMANT OR PERSON FILING ON HIS/HER BEHALF GIVING RELATIONSHIP TO CLAIMANT | DATE |
| --- | --- | --- | --- |
| Alan Romero (SBN 249000 | 03/26/2021 | | 03/26/2021 |

Revised 11-2016